## IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY, OHIO
### CIVIL DIVISION

Bruce Kerner,
1908 Chateaugay Way
Blacklick, Ohio 43004

and

Mindy Kerner,
1908 Chateaugay Way
Blacklick, OH 43004

      Plaintiffs,

v.

ETI Environmental Laboratory,
c/o Robert Simon – Resident Agent
4730 Mountain Rd. – Suite 21
Pasadena, MD 21122

and

AAA Simon Holding, LLC,
c/o Robert Simon – Agent
4730 Mountain Road – Suite 21
Pasadena, MD 21122

and

Dr. Robert K. Simon,
4730 Mountain Road – Suite 21
Pasadena, MD 21122

and

Omni Group, Inc.
c/o Dennis Markferding
244 West Airpark Drive
Indian Lake, PA 15926

and

09 CVH 9 13665

Case No.:

Judge:

**VERIFIED COMPLAINT WITH JURY DEMAND ENDORSED HEREON**

FILED
COMMON PLEAS COURT
FRANKLIN CO. OHIO
2009 SEP 10 PM 3:12
CLERK OF COURTS-CV


EXHIBIT
A-1

Dennis Markferding,
244 West Airpark Drive
Indian Lake, PA 15926

   Defendants.

## COMPLAINT

Now come Plaintiffs Dr. Bruce Kerner and Mindy Kerner (hereinafter "Plaintiffs"), by and through counsel, and for their Complaint state the following:

## BACKGROUND

1. Plaintiffs are individuals that reside in Franklin County, Ohio.

2. At all times relevant to this Complaint, Plaintiffs were the owners and occupants of the residential real property located at 2756 Dale Avenue, Bexley, OH, 43209 (hereinafter "the property").

3. Defendant ETI Environmental Laboratory (hereinafter "ETI") is a Maryland Corporation in the business of analyzing, removing, disposing, and temporarily storing contaminated property. ETI is a division of AAA Simon Holding, LLC.

4. Defendant AAA Simon Holding, LLC (hereinafter "AAA") is a Maryland Corporation.

5. Defendant Dr. Robert K. Simon (hereinafter "Simon") is an individual residing in Maryland. Simon is a Registered Professional Industrial Hygienist, Certified Environmental Consultant, and an Environmental and Forensic Toxicologist.

6. Defendant Omni Group, Inc. (hereinafter "Omni Group") is a Maryland Corporation.

7. Defendant Dennis Markferding (hereinafter "Markferding") is an individual residing in Pennsylvania.

8. In December 2003, Plaintiffs retained the services of Terminix International *et al.* (hereinafter "Terminix") to treat the property for infestation of fleas.

9. As a result of the treatment of Plaintiffs' property for fleas, Plaintiffs filed suit against Terminix in Franklin County Court of Common Pleas Case No. 2004-CVC-6872. That case was subsequently removed to the United States District Court for the Southern District of Ohio – Eastern Division. Plaintiffs' case against Terminix was assigned Case No. 2:04-CV-735 whereby the parties entered into a settlement agreement to resolve the case.

10. Plaintiffs were represented by the law firm of Squire, Sanders & Dempsey, L.L.P. in their suit against Terminix.

11. In order to proceed with their case against Terminix, Plaintiffs needed to retain the services of an Environmental and Forensic Toxicologist as an expert witness.

12. Plaintiffs retained the services of Simon to serve as their expert witness due to his training, reputation, and expertise as an Environmental and Forensic Toxicologist.

13. Simon, ETI, and AAA began to instruct Plaintiffs through a work protocol that would be necessary in order to salvage as much of their personal property as possible.

14. Simon, ETI, and AAA introduced Plaintiffs to Omni Group and Markferding and instructed Plaintiffs that the cleaning and storage services provided by Omni Group and Markferding were necessary to complete the work protocol in order to salvage Plaintiff's personal property.

15. Therefore, Plaintiffs retained the services of Omni Group and Markferding to assist with the work protocol outlined by Simon, ETI, and AAA.

16. Simon, ETI, and AAA represented that they have worked on previous projects with Omni Group and Markferding and informed Plaintiffs that Omni Group and Markferding were experienced and competent to handle the duties outlined in the work protocol outlined by

Simon, ETI, and AAA.

17. Plaintiffs and Defendants entered into an agreement whereby Defendants would consult with Plaintiffs and Plaintiffs' counsel with regard to the treatment of the residence and property; Defendants would put together an inventory of all furniture, furnishings and personal possessions of Plaintiffs; review the contents of the property and determine what property could be cleaned, and thus retained, and what property must be destroyed due to contamination by pesticides; personal items would be stored in the temporary holding facility of Omni Group, in Indian Lake, PA; all property that was to be disposed would be transported to a landfill and a disposal manifest was to be signed off on by the landfill; if an item was "CLEAN" or could be "cleaned" it would be retained in the temporary holding facility of Omni Group, in Indian Lake, PA and returned to the Plaintiffs; and any item to be disposed of was to be maintained in a photographic inventory list. A copy of this agreement is attached as Exhibit "A."

18. As inducement to Plaintiffs to enter into the agreement with Defendants, either individually and/or in concert with the other Defendants, Simon made various express and implied representations to Plaintiffs, including, but not limited to the fact that Defendants had worked together before on several similar projects and that Omni Group and Markferding were experienced and competent to perform such work as called for in the agreement and that the Plaintiffs personal possessions would be cleaned and returned to Plaintiffs within a two month period.

19. Defendants have failed to return Plaintiffs' personal property that Defendants have in their custody and Plaintiffs believe they have destroyed all of Plaintiffs' personal property without Plaintiffs' permission.

20. This Court has personal jurisdiction over the parties and subject matter jurisdiction over the issues raised herein. The parties entered into this agreement in Franklin County, Ohio. Furthermore, at all times relevant to this Complaint, the property that is subject to this action was located in Franklin County, Ohio.

## COUNT I – BREACH OF CONTRACT

21. Plaintiffs reallege herein paragraphs one through twenty-one (21) above.

22. On or about September 17, 2004, Plaintiffs and Defendants entered into a written agreement titled a "Work Plan for the Removal, Disposal, and Temporary Storage of Selected Kerner Family Furniture and Possessions from 2756 Dale Avenue, Bexley, Ohio 43209" by which Defendants agreed to would consult with Plaintiffs and Plaintiffs' counsel with regard to the application of pesticides at the property; Defendants would put together an inventory of all furniture, furnishings and personal possessions of Plaintiffs; review the contents of the property and determine what property could be cleaned, and thus retained, and what property must be destroyed due to contamination; personal items would be stored in the temporary holding facility of Omni Group, in Indian Lake, PA; all property that was to be disposed would be transported to a landfill and a disposal manifest was to be signed off on by the landfill; if an item was "CLEAN" or could be "cleaned" it would be retained in the temporary holding facility of Omni Group, in Indian Lake, PA and returned to the Plaintiffs; and any item to be disposed of was to be maintained in a photographic inventory list.. A copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

23. Plaintiffs performed all of their duties and obligations under the terms of the Agreement.

24. Defendants breached the terms of the written agreement when they failed to (1) "clean"

each and every possible personal possession and/or property of Plaintiffs that could be cleaned; (2) maintain an accurate photographic inventory log of disposed items; (3) timely return Plaintiffs' cleaned personal possessions and/or property; (4) sold, for Defendants' profit, Plaintiffs' personal possessions and/or property that was to be cleaned or disposed of; and (5) failed to maintain disposal manifests for property disposed of in landfills.

25. As a direct and proximate result of Defendants breach of contract, Plaintiffs suffered damages in an amount of $99,240.00.

## COUNT II – CONVERSION

26. Plaintiffs reallege herein paragraphs one through twenty-five (25) above.

27. On or about December 1, 2004, Defendants converted to their own use the personal possessions and/or property of the Plaintiffs.

28. These converted personal possessions and/or property were Plaintiffs' personal possessions and/or property.

29. Defendants have not returned converted personal possessions and/or property to Plaintiffs.

30. Defendants' failure to return the Plaintiffs' personal possessions and/or property is the direct and proximate cause of damages incurred by Plaintiffs.

## COUNT III – REPLEVIN

31. Plaintiffs reallege herein paragraphs one through thirty (30) above.

32. Defendants are unlawfully withholding Plaintiffs' personal possessions and/or property.

33. Defendants have no right to Plaintiffs' personal possessions and/or property.

34. Defendants' unlawful withholding of Plaintiff's personal possessions and/or property is

the direct and proximate cause of damages incurred by Plaintiffs.

## COUNT IV - FRAUD

35. Plaintiffs reallege herein paragraphs one through thirty-four (34) above.

36. Before Plaintiffs signed the Agreement and before Plaintiffs retained the services of Defendants to remove, dispose, and/or store the Plaintiff's personal property, Defendants, either individually and/or in concert with the other Defendants, represented directly or indirectly to Plaintiffs that Defendants would (1) "clean" every possible personal possession and/or property of Plaintiffs that could be cleaned; (2) maintain an accurate photographic inventory log of disposed items; (3) timely return Plaintiffs' cleaned personal possessions and/or property; (4) not sell, for Defendants' profit, Plaintiffs' personal possessions and/or property that was to be cleaned or disposed of; and (5) maintain disposal manifests for property disposed of in landfills Plaintiffs are informed and believe, and based upon such information and belief, allege that the above-mentioned representations made by Defendants, either individually and/or in concert with the other Defendants, were, in fact, false.

37. When Defendants, either individually and/or in concert with the other Defendants, made these representations, they knew them to be false, and these representations were made by Defendants with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in the manner alleged in this Complaint.

38. Plaintiffs, at the time the above-mentioned representations were made by Defendants either individually and/or in concert with the other Defendants, and at the time Plaintiffs took the actions alleged in this Complaint, were ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations,

Plaintiffs were induced to and did sign the Agreement and agreed to and did actually retain Defendants to remove, dispose, and/or store the Plaintiff's personal property. Had Plaintiffs known the actual facts, Plaintiffs would not have taken such action.

39. Plaintiffs, by their reliance on Defendants' false and fraudulent representations that were made either individually and/or in concert with the other Defendants, have been damaged in a sum of greater than $25,000.

40. The above-mentioned acts of Defendants were willful, wanton, malicious, and oppressive; therefore, justify the awarding of exemplary and punitive damages.

## COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41. Plaintiffs reallege herein paragraphs one through forty (40) above.

42. All of the actions and representations of Defendants were intentional and were done willfully, wantonly, and maliciously with the intent to harass and cause Plaintiffs emotional distress.

43. As a direct and/or proximate cause of the actions, harassment, and representations of Defendants, Plaintiffs have suffered serious emotional distress.

## COUNT VI - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

44. Plaintiffs reallege herein paragraphs one through forty-three (43) above.

45. All of the actions and representations of Defendants were negligent and caused Plaintiffs emotional distress.

46. As a direct and/or proximate cause of the actions, harassment, and representations of Defendants, Plaintiffs have suffered serious emotional distress.

**WHEREFORE**, Plaintiffs demand judgment against Defendants joint and severally as follows:

A.  For Count I, a sum greater than $99,420.00 to be determined at trial;

B.  For Counts II, IV, V, and VI, a sum greater than $25,000;

C.  For Count IV, punitive damages for a sum greater than $25,000;

D.  For Count III, immediate return of Plaintiffs' personal possessions and/or property that Defendants are unlawfully withholding and reasonable attorneys' fees;

E.  For all Counts, reasonable attorney's fees, costs of the suit incurred, and for such other and further relief as the court deems just and proper.

Respectfully submitted,

GOLDEN & MEIZLISH CO., LPA

By: _____
Keith E. Golden (0011657)
Adam H. Karl (0082103)
923 E. Broad Street
Columbus, OH 43205
(614)258-1983 – Phone
(614)253-5071 – Facsimile
golmeiz@aol.com
Attorneys for Plaintiffs

## JURY DEMAND

Now come Plaintiffs and demand a trial by jury on all issues presented herein.

GOLDEN & MEIZLISH CO., LPA

By: _____
Keith E. Golden (0011657)
Adam H. Karl (0082103)

## VERIFICATION

I declare under penalty of perjury or under the laws of the State of Ohio that the Complaint information above and attached is true to the best of my information, knowledge, and belief.

Date: 9/7/09

Dr. Bruce Kerner

Date: 9/7/09

Mindy Kerner

## ETI Environmental

FEDEX: 4730 Mountain Road, Suite 21, Pasadena, MD 21122
Mailing Address: Post Office Box 2410, Pasadena, MD 21123
(410) 437-4100;    facsimile (410) 437-5400    (800) 296-7053
etilaboratory@aol.com

<u>Work Plan for the Removal, Disposal and Temporary Storage of Selected Kerner Family Furniture and Possessions from 2756 Dale Avenue, Bexley, Ohio 43209.</u>

September 15, 2004

Dr and Mrs. Bruce Kerner
2756 Dale Avenue
Bexley, Ohio 43209

### 1. Work Protocol Introduction

This protocol has been prepared by ETI Environmental for the removal of Kerner Family possessions from their residence at 2756 Dale Avenue, Bexley, Ohio 43209 after this residence was contaminated with pesticides including cyfluthrin (Tempo 20 etc), pyrethrins/piperonyl butoxide (PT 565 Plus XLO Aerosol), and possibly other chemicals, used in the Kerner Residence by Terminix International during December, 2003. This protocol has been prepared after consultation and review by ETI of the following information and documentation.

1.1. consultation with the owners (Kerners), and their attorneys (Squire, Sanders & Dempsey, LLP);

1.2. a review of testing conducted at the Kerner Residence by the Ohio Department of Agriculture, SEA Limited/Clayton Environmental (January, 2004) and Pest Control Services, Inc./SEA/Wisconsin Occupational Testing Laboratory (WOHL) (April, 2004);

1.3. Preparation of a Kerner inventory of furniture, furnishings and personal possessions from an inventory prepared by the Kerners;

1.4. Completion of a site visit by R. K. Simon, Ph.D., ETI, and Dennis Markferding, Omni Group, Inc, Indian Lake, PA, to the Kerner Residence on September 1, 2004; and

1.5. Final review of the contents removal and disposal with the Kerners, their attorneys and Omni Group. A final status spreadsheet listing of the Kerner possessions is appended to this work protocol.

This work protocol does not include any testing as specified in the USEPA Procedure known as TCLP (Toxicity Characteristic Leaching Procedure, 40 CFR Parts 261ff) since none of the pesticides found and/or used in the Kerner Residence are listed

Page 1

PLAINTIFF'S EXHIBIT A

## ETI Environmental

FEDEX: 4730 Mountain Road, Suite 21, Pasadena, MD 21122
Mailing Address: Post Office Box 2410, Pasadena, MD 21123
(410) 437-4100;   facsimile (410) 437-5400    (800) 296-7053
etilaboratory@aol.com

under RCRA (the Resource, Conservation and Recovery Act, 1976 and/or TCLP). However, since the Kerner possessions have been shown by testing to be contaminated with pesticide residues the removal of possessions will be conducted under appropriate worker protection standards as specified by OSHA and the State of Ohio. Waste will be contained as needed for disposal in a licensed, municipal landfill in the Columbus, Ohio area. Trucker waste for disposal will be placed into an enclosed dumpster and will be transported by a licensed, insured hauler to the landfill. A disposal manifest will be prepared and signed off by the landfill, the waste owner and the waste hauler contractor. Items trucked to the temporary holding facility of Omni Group in Indian Lake, PA will be transported in a licensed, insured vehicle to the Omni facility.

II. <u>Work Protocol</u>

1. All personnel at the job site (2756 Dale Avenue, Bexley, Ohio 43209) will be only those employed for this work by Omni Group, Inc. No outside personnel or visitors or assessors of any type will be allowed onsite during this work unless expressly approved by Omni Group, the Kerners and/or their attorneys.

2. The work will begin as soon as a contract has been signed by and between Dr. Bruce Kerner and Omni Group and appropriate retainer has been received by Omni Group to begin the work.

3. Only equipment, trucks and waste handling items approved by Omni Group will be allowed onsite and will be used for this work. A closed transport truck will be used for the transport of CLEAN items (see inventory) to the Omni Indian Lake facility. A closed dumpster will be used for the transport of the disposed items to the local landfill.

4. All Omni personnel will enter and work inside the Kerner Residence while outfitted in appropriate PPE (personal protection equipment) that includes respiratory protection (NIOSH approved respirator with appropriate pesticide protection cartridges) and full body Tyvek (or equivalent) suits fitted with booties and hoods. All workers will use hand protection consisting of heavy duty worker gloves (neoprene rubber or equivalent) to provide for protection from skin exposure to pesticides during work. All workers must wear appropriate safety shoes to prevent foot injuries.

5. Omni Group will work from the enclosed ETI Inventory list which provides for a final status for each Kerner item as either CLEAN or Disposal. Each CLEAN item must be removed from the appropriate work room prior to the removal of Disposal items. This procedure will lower the potential for any further contamination of the CLEAN items. CLEAN items should be

Page 2

**ETI Environmental**
FEDEX: 4730 Mountain Road, Suite 21, Pasadena, MD 21122
Mailing Address: Post Office Box 2410, Pasadena, MD 21123
(410) 437-4100;    facsimile (410) 437-5400    (800) 296-7053
etilaboratory @ aol.com

appropriately packaged for removal to the Omni storage truck that will transport the items back to Indian Lake, PA. Clean items such as dishes, silverware, pottery, etc should be hand packed into boxes or other suitable containers for the transport to the storage facility. CLEAN items of furniture should be individually wrapped or protected for the transport with either polyethylene plastic or disposable type furniture blankets. Each CLEAN item or CLEAN bag of items must be labeled with a description of the contents. Each CLEAN item must be placed on a chain of custody list that is maintained by Omni Group during the removal and transport of the item to the Omni facility. Omni Group will not guarantee or insure against breakage of any CLEAN items. Any insurance for breakage is the responsibility of the Kerners.

6. All clothing, and small items, that can be bagged will be placed into heavy duty polyethylene plastic bags that will be sealed with duct tape. Items that may be heavy when bagged or could pierce the bag should be double bagged at the discretion of the Omni work crew.

7. All furniture items with movable parts (such as drawers in desks, tables, dressers, etc) must have these movable parts either taken out before transport of the item to the disposal dumpster or the entire furniture item must be wrapped with duct tape to prevent the drawer or movable part from falling out of the main item during disposal.

8. All disposed items will be maintained on an Omni photographic inventory list that will serve as the chain of custody list for the disposed of items. When the disposal occurs at the landfill Omni Group will have the landfill sign off that they have received all of the items listed on the inventory (see enclosed) that are marked for disposal.

9. The Kerners must provide keys and access to their house as needed to complete this project and an alternate power of attorney to sign off on documents in the event that they are not personally available to sign documents such as the waste manifest.

10. Omni Group will transport all CLEAN items back to its Indian Lake, PA storage facility where items will be stored in a clean room facility for possible decontamination of the CLEAN items. Omni Group will consult with Dr. Simon of ETI on the cleanup of each item as listed on the enclosed spreadsheet inventory listing. Omni Group will not guarantee the cleanability of each item, but will make its best effort to perform cleanup under the guidance of Dr. Simon and ETI. All clearance tests on CLEAN items will be

Page 3

**ETI Environmental**

FEDEX: 4730 Mountain Road, Suite 21, Pasadena, MD 21122
Mailing Address: Post Office Box 2410, Pasadena, MD 21123
(410) 437-4100;   facsimile (410) 437-5400   (800) 296-7053
etilaboratory @ aol.com

performed by Dr. Simon and will be a separately billable item.

11. Omni Group will provide evidence of its company general liability insurance policy, workers compensation insurance (WEC) and transportation insurance for this project.

### III. Costs of Services.

Omni Group has agreed with Dr. Bruce Kerner to complete the Work Plan for Removal, Disposal and Temporary Storage (Cleanup) as described above for the fixed cost of $15,000. This cost includes all direct and indirect labor costs, overhead, transportation costs, waste disposal costs, insurance costs, fees, taxes and temporary storage costs (during cleanup). Any fees for storage beyond the cleanup period (limit of 2 months) will be billable at the rate of $ 500 per month by Omni to Dr. Bruce Kerner.

Upon acceptance Dr. Kerner will provide a retainer of $ 7,500 payable to Omni Group, Inc. prior to the start of the work plan.

Accepted and Approved by:

_____   Sept 15-04
Dennis Markferding, President      date
Omni Group, Inc.

Accepted and Approved by:

_____   9/17/04
Bruce Kerner, M.D.                 date

Prepared by: _____   9/15/04
ETI Environmental Laboratory           date
Robert K. Simon, Ph.D., RPIH, DABB, CEC
Registered Professional Industrial Hygienist
Certified Environmental Consultant and
Environmental/Forensic Toxicologist

Page 4