**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **BRUCE KERNER,** *et al.*, <br><br>    Plaintiffs, <br><br> v. <br><br> **ETI ENVIRONMENTAL LABORATORY,** *et al.*, <br><br>    Defendants. | **Case No. 2:09CV1092** <br> **Judge Peter C. Economus** <br> **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court for consideration of two separate motions to dismiss. Defendants ETI Environmental Laboratory, AAA Simon Holding, LLC, and Dr. Robert Simon (collectively, "the Simon Defendants") filed a motion to dismiss on February 24, 2011. (Dkt. # 34.) Defendants Omni Group Inc. ("Omni") and Dennis Markferding ("Markferding")[1] filed a motion to dismiss on March 31, 2011. (Dkt. # 43.) Plaintiffs Bruce and Mindy Kerner ("the Kerners") have responded to both motions. (Dkt. # 37, 46.)

**I. FACTUAL BACKGROUND**

This diversity action arises out of a dispute between the Kerners and the Defendants over the cleanup and storage of the Kerners' personal property following a pesticide contamination caused by Terminex International ("Terminex"). In December of 2003, The Kerners hired Terminex to treat their home for an infestation of fleas. (Dkt. # 22 ¶ 8.) The Kerners later brought suit against Terminex for contaminating their home and personal possessions. (Dkt. # 22 ¶¶ 9, 17.) The lawsuit ultimately resulted in a settlement agreement. (Dkt. # 22 ¶ 9.)

During the litigation against Terminex, the Kerners retained Dr. Robert Simon as an expert witness. (Dkt. # 22 ¶ 12.) The Simon Defendants drafted a work protocol for the Kerners

---

[1] Defendants ETI Environmental Laboratory, AAA Simon Holding, LLC, Dr. Robert Simon, Omni Group Inc., and Dennis Markferding will be referred to collectively as "the Defendants."

that was necessary to salvage as much of the family's personal property as possible ("the work protocol"). (Dkt. # 22 ¶ 13.) The work protocol outlined in detail how Omni would inventory, store, clean, and/or dispose of the Kerners' contaminated property. (Dkt. # 22 ¶ 17.)

In the instant case, the Kerners allege that the Defendants have failed to return their property and believe they have destroyed the items without the Kerners' permission. (Dkt. # 22 ¶ 25.)

## II. PROCEDURAL BACKGROUND

The Kerners filed the Original Complaint in this matter on September 10, 2009 in the Franklin County Court of Common Pleas. (Dkt. # 1-1.) After removing the case to federal court, the Kerners voluntarily dismissed the Simon Defendants on December 23, 2009, without prejudice. (Dkt. # 1, 7.) On December 29, 2010, the Kerners filed a First Amended Complaint ("Amended Complaint"), which reinstated claims against the Simon Defendants. (Dkt. # 22.) The Defendants now move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III. STANDARD OF REVIEW

Rule 12(b)(6) requires dismissal of a complaint that fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the

2

complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

"Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Therefore, consideration of the work protocol does not require the Court to convert the Defendants' motions to dismiss to motions for summary judgment.

## IV. ANALYSIS

In the Amended Complaint, the Kerners bring claims of breach of contract, breach of implied contract, promissory estoppel, conversion, replevin, fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress against all of the Defendants. The Defendants assert that nearly all of the Kerners' allegations[2] are either barred by the applicable statutes of limitations or fail to state claims upon which relief can be granted, or both.

### A. Statutes of Limitations

The parties do not dispute which statutes of limitations apply to each of the Kerners' claims. The central issue at this juncture is when those statutes began to run.

#### i. Ohio Revised Code Section 2305.07

The Kerners acknowledge that their claims of breach of implied contract and promissory estoppel are governed by Ohio Revised Code Section 2305.07, which provides:

---

[2] Omni has not moved to dismiss the Kerners' breach of contract claim against them.

> Except as provided in sections 126.301 [126.30.1] and 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued.

Ohio Revised Code § 2305.07.

At issue is the date the Kerners' claims began to accrue. The Ohio Supreme Court has stated that "a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Collins v. Sotka*, 81 Ohio St. 3d 506, 507 (1998) (citing *Kunz v. Buckeye Union Ins. Co.*, 1 Ohio St. 3d 79 (1982)). However, under Ohio law, "a cause of action for breach of an oral contract does not accrue until the plaintiff discovers the failure to perform as agreed." *Whittle v. Proctor & Gamble*, 589 F. Supp. 2d 944, 949 (S.D. Ohio 2008) (citing *Kotyk v. Rebovich*, 87 Ohio App. 3d 116, 121 (Ohio Ct. App. 1993); *Biro v. Hartman Funeral Home*, 107 Ohio App. 3d 508, 515 (Ohio Ct. App. 1995)).

In laying out the factual bases of the Kerners' claims of breach of implied contract and promissory estoppel, the Amended Complaint states:

> As inducement to Plaintiffs to enter into the agreement with Defendants, either individually and/or in concert with the other Defendants, Simon made various express and implied representations to Plaintiffs, including, but not limited to the fact that Defendants had worked together before on several similar projects and that Omni Group and Markferding were experienced and competent to perform such work as called for in the agreement and that the Plaintiffs personal possessions *would be cleaned and returned to Plaintiffs within a two month period*.

(Dkt # 22 ¶ 23) (emphasis added).

The Defendants argue that that the statute of limitations, therefore, began to run no later than November 15, 2004—two months after the parties executed the work protocol on September 15, 2004. The Kerners do not deny that they were aware their property had not been returned on that date, but instead suggest that February 7, 2008 should be the date accrual

4

began—the day on which they entered into a settlement agreement to resolve their lawsuit against Terminex. The Kerners contend that this is the date their claims began to accrue because their injuries continued until the Terminex litigation concluded. Notably, this date does not appear anywhere in the Amended Complaint.

The Court finds that the Kerners' claims of breach of implied contract and promissory estoppel began to accrue on November 15, 2004 and ran out on November 15, 2010. The Court is not persuaded by the Kerners' argument that their injuries continued until February of 2008. The triggering injury was the discovery of the alleged breach of oral contract, which occurred on November 15, 2004, not the Defendants' alleged continued possession of the Kerners' property. November 15, 2004 is the date on which the Kerners would have become aware that their items were not returned, as promised in the work protocol. Because the Amended Complaint was filed on December 29, 2010, after § 2305.07 had run out, the Kerners' claims of breach of implied contract and promissory estoppel are barred unless they relate back, as described in Federal Rule of Civil Procedure 15(c), to the Original Complaint.

### ii. Relation Back

None of the parties have addressed in their briefs the issue of whether these claims are timely because they relate back to the filing of the Original Complaint. Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading…"

The Court finds that the Kerners' claims of breach of implied contract and promissory estoppel arise out of largely the same set of facts laid out in the Original Complaint and thus relate back to that pleading, which was filed on September 10, 2009—almost a year before

5

§ 2305.07 ran out. However, as discussed below, these claims are nevertheless dismissed for failure to state a claim.

### iii. Ohio Revised Code Section 2305.09

The parties agree that the Kerners' remaining claims are governed by Ohio Revised Code Section 2305.09, which provides in pertinent part:

> . . . [A]n action for any of the following causes shall be brought within four years after the cause thereof accrued:
> (A) For trespassing upon real property;
> (B) For the recovery of personal property, or for taking or detaining it;
> (C) For relief on the ground of fraud, except when the cause of action is a violation of section 2913.49 of the Revised Code, in which case the action shall be brought within five years after the cause thereof accrued;
> (D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code;
> (E) For relief on the grounds of a physical or regulatory taking of real property.

Ohio Revised Code § 2305.09.

Therefore, the Kerners' claims of conversion, replevin, fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress are all subject to a four-year statute of limitations.

While the Kerners again urge the Court to use the date of their February 7, 2008 settlement with Terminex as the date their claims began to accrue, this argument is unavailing. The Kerners explicitly state in the Amended Complaint that: "On or about December 1, 2004, Defendants converted to their own use the personal possessions and/or property of the Plaintiffs." (Dkt. # 22 ¶ 46.) Thus, the Kerners have alleged a specific date on which the Defendants committed the wrongful act that provides the factual basis for all of the Kerners' remaining claims, with the exception of their fraud claim.[3] The Court, therefore, finds that all of

---

[3] The Kerners' fraud claim did not begin to accrue until the Kerners discovered, or should have discovered, the alleged fraud. *Investors REIT One v. Jacobs*, 46 Ohio St. 3d 176, 179 (1989); *see also* Ohio Revised Code

these claims began to accrue on December 1, 2004 and ran out on December 1, 2008.

Furthermore, even if these claims related back to the Original Complaint, that pleading was filed on September 10, 2009, almost a year after the statute ran on out on December 1, 2008. Accordingly, the Kerners' claims of conversion, replevin, intentional infliction of emotional distress, and negligent infliction of emotional distress are barred against all of the Defendants.

**B. Breach of Contract**

The Simon Defendants and Markferding argue that The Kerners' breach of contract claim, with respect to them, must be dismissed because: (1) they are not parties to the work protocol, (2) the work protocol fails for lack of consideration on their parts, and (3) the Kerners have not alleged any breaches by these particular defendants. The Kerners respond by asserting that they believed the Simon Defendants and Markferding were parties to the work protocol and that they are agents of Omni.

The Court finds that the work protocol cannot constitute a contract between the Kerners and the Simon Defendants or between the Kerners and Markferding. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (2003). In other words, where a contract is clear and unambiguous, "the court need not . . . go beyond the plain language of the agreement to determine the rights and obligations of the parties." *Bucher v. Schmidt*, 2002 Ohio 3933, P13 (Ohio Ct. App. 2002).

The three-part work protocol makes clear that it is a contract between the Kerners and Omni. Section II sets out the work Omni agreed to perform and Section III provides for the payment Omni was to receive in exchange for that work. While Section I does refer to the

---

§ 2305.09 ("[a fraud claim] shall not accrue . . . until the fraud is discovered"). Viewing the pleadings in the light most favorable to the Kerners, the Court finds no facts specific enough to indicate when the Kerners became aware of their fraud claim. However, this point is moot because the claim is dismissed below.

7

Simon Defendants, this section consists of primarily background and explanatory facts and not promises.

Section II of the work protocol describes an understanding between the parties that: "The work will begin as soon as *a contract has been signed by and between Dr. Bruce Kerner and Omni Group* and appropriate retainer has been received by Omni Group to begin the work." (Dkt. # 22-1 at 2) (emphasis added). Section II continues: "Only equipment, trucks, and waste handling items approved by Omni Group will be allowed onsite and will be used for this work." (Dkt. # 22-1 at 2.) With respect to who will be performing the work, the work protocol only refers to "Omni Personnel." (Dkt. # 22-1 at 2.)

Section II then goes on to set out several other responsibilities and obligations of Omni and its crew. The only reference to the Simon Defendants in Section II is the following phrase:

> Omni Group will consult with Dr. Simon of ETI on the cleanup of each item as listed on the enclosed spreadsheet inventory listing. Omni Group will not guarantee the cleanability of each item, but it will make its best effort to perform cleanup under the guidance of Dr. Simon and ETI. All clearance tests on CLEAN items *will be performed by Dr. Simon* and will be a *separately billable item*.

(Dkt. # 22-1 at 3-4) (emphasis added).

While this language could be construed to create an obligation on the part of the Simon Defendants, it is clear from a full reading of the contract that the clearance test arrangement was meant to constitute a transaction separate from the work protocol.

Moreover, the Simon Defendants and Markferding receive nothing of value under the work protocol. As the Defendants point out, a complete lack of consideration is a valid defense to a breach of contract. *Brads v. First Baptist Church*, 89 Ohio App. 3d 328, 336 (Ohio Ct. App. 1993). Under the work protocol, all of the consideration is exchanged between the Kerners and Omni.

8

Finally, the Amended Complaint contains no alleged breach on the part of the Simon Defendants or Markferding. While the Kerners contend that the Simon Defendants and Markferding were "heavily involved in every step of the process" and were acting as "agents" of Omni, their brief is wholly lacking of any law in support of this argument. The work protocol makes clear who the parties to the contract are, and the Amended Complaint does not contain facts sufficient to attach third-party liability to the Simon Defendants or Markferding.

The Court finds that with respect to the Simon Defendants and Markferding: (1) they are not parties to the work protocol, (2) the work protocol contains no consideration related to them, and (3) the Kerners have failed to allege a requisite breach with respect to those defendants. Therefore, the Kerners have failed to state a claim of breach of contract on which relief can be granted against the Simon Defendants or Markferding.

### C. Breach of Implied Contract and Promissory Estoppel

The Defendants next argue that the Kerners' claims of breach of implied contract and promissory estoppel are barred by the parol evidence rule and because a written contract exists. "The parol-evidence rule is a principle of common law providing that 'a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing.'" *Bellman v. Am. Int'l Group*, 113 Ohio St. 3d 323, P7 (2007) (citing Black's Law Dictionary (8th Ed. 2004)).

The Kerners contend that "there is evidence of an agreement, that is in addition to, or in clarification of, the work protocol, between the Plaintiffs and each of the Defendants that that they were to contact the Plaintiffs prior to the disposal of certain specific items and also of the agency relationship between the Omni Defendants and the Simon Defendants."

(Dkt. # 37 at 6-7.) However, the evidence the Kerners have stated "in clarification of the work protocol,"—namely, alleged oral promises regarding cleaning, storage, and return of their property made before the agreement was signed—is precisely the type of evidence barred by the parol evidence rule. The work protocol represents a complete, unambiguous embodiment of the agreement between the Kerners and Omni. Because the Kerners provide no authority to except their evidence in support of these claims from the parol evidence rule, they have failed to state a claim of breach of implied contract or promissory estoppel on which relief can be granted.

**D. Conversion**

The Defendants assert that the Kerners' conversion claim must be dismissed because: (1) the Kerners have failed to allege a demand for return of property, (2) the Kerners have failed to allege the Defendants' refusal to comply, and (3) because the Kerners' conversion claim is actually a disguised contract claim.

Ohio courts define conversion as "a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 226 (1976) (citing *Railroad Co. v. O'Donnell*, 49 Ohio St. 489, 497 (1892). "The elements of a conversion claim are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F.Supp. 77, 81 (S.D. Ohio 1996).

While the Amended Complaint does not specify which defendants received the demand or refused to return the Kerners' property, when viewed in the light most favorable to the Kerners, in paragraphs 45-51 of the Amended Complaint, they have alleged facts, which, if

proven, would establish each of the elements of a conversion claim. (Dkt. # 22 at ¶¶ 45-51.) However, as discussed above, this claim is barred by the statute of limitations, and must nevertheless be dismissed.

### E. Replevin

The Defendants argue that the Kerners cannot maintain a replevin claim because the property in question has allegedly been destroyed. A plaintiff in a replevin action is required to "prove that he is entitled to possession of the property and that, at the time the [suit] was filed, the defendant had actual or constructive possession and control of [it]." *Schneider v. Schneider*, 178 Ohio App. 3d 264, 269 (Ohio Ct. App. 2008) (citing *Mulhollen v. Angel*, 2005 WL 351761, ¶ 23 (Ohio Ct. App. 2005)); *Cunningham v. Cleveland Police Dep't*, 2011 U.S. Dist. LEXIS 6502, *3-4 (N.D. Ohio Jan. 24, 2011).

The Kerners state in the Amended Complaint that: "Defendants have failed to return Plaintiffs' personal property that Defendants have in their custody and Plaintiffs believe they have *destroyed all of Plaintiffs' personal property* without Plaintiffs' permission." (Dkt. # 22 ¶ 25) (emphasis added). The Kerners have, therefore, failed to plead that the Defendants are in possession of their property, an essential element of a replevin claim. The Kerners do not attempt to rebut this argument in their briefs and the Court thus finds that they have not stated a replevin claim on which relief can be granted.

### F. Fraud

The Defendants assert that the Kerners have not sufficiently stated their fraud claim. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Moreover, a plaintiff must, at a minimum, "identify the 'time, place and content of the alleged misrepresentation on which he or she relied; the

fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993). "The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir.1999) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988)).

In essence, the Kerners argue that the Defendants induced them to sign the work protocol by making promises that the Defendants knew they would not perform. In the Amended Complaint, the Kerners simply restate the elements of their breach of contract claim to support a claim of fraud. If proven, the fact that the Defendants made these statements and then failed to perform might give the Kerners a breach of contract claim. But they have not alleged facts to support a fraud claim with the specificity required by Rule 9(a). Instead, they make a series of conclusory statements, loosely based upon their "information and belief." (Dkt. # 22 ¶ 59.) Although courts have permitted allegations of fraud based upon "information and belief," a complaint "must set forth a factual basis for such belief," and the allowance of "this exception 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 n. 3 (5th Cir. 1994)).

Because the Kerners' claim of fraud is based solely on non-specific speculation and unsupported conclusions, it does not meet the requirements of Rule 9(b) and must, therefore, be dismissed. *See United States ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005).

**G. Intentional Infliction of Emotional Distress**

The Defendants argue that the Kerners' claim of intentional infliction of emotional distress ("IIED") is factually insufficient. Specifically, the Defendants assert that the Kerners have not pleaded facts supporting an allegation of outrageous and extreme conduct. Ohio courts have held that the conduct necessary to establish the tort of IIED is characterized as behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hale v. Vance*, 267 F. Supp. 2d 725, 736 (S.D. Ohio 2003) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousmen & Helpers of America*, 6 Ohio St. 3d 369, 375 (Ohio 1983)). A trial court may dismiss a claim for IIED, pursuant to Rule 12(b)(6), where the alleged conduct does not, as a matter of law, reach such a level of "extreme and outrageous" conduct. *Morrow v. Reminger & Reminger Co.*, L.P.A., 183 Ohio App. 3d 40, 62-63 (Ohio App. Ct. 2009) (internal citations omitted).

The facts pleaded in the Amended Complaint allege that a business improperly retained and then destroyed property it was hired to help clean and store. This loss, if proven, is indeed unfortunate. But the remedy for that loss is provided by contract law. The alleged actions do not rise to the level of intentional infliction of emotional distress.

**V. <u>CONCLUSION</u>**

For the reasons discussed above, the Court makes the following findings:

1) The Kerners' claims of conversion, replevin, intentional infliction of emotional distress, and negligent infliction of emotional distress against *all of the Defendants* are barred by Ohio Revised Code Section 2305.09.

2) The Kerners' claims of implied contract, promissory estoppel, replevin, fraud, and

intentional infliction of emotional distress against *all of the Defendants* fail to state claims on which relief can be granted.

3) The Kerners' claim of breach of contract against *the Simon Defendants and Markferding* fails to state a claim on which relief can be granted.

4) The Kerners have chosen to withdraw their claim of negligent infliction of emotional distress.  (Dkt. # 37 at 10.)

Therefore, the Court hereby **GRANTS** both pending motions to dismiss.  (Dkt. # 34, 43.) The only remaining causes of action are the Kerners' breach of contract claim against *Omni* and the counterclaims of Omni and Markferding.

**IT IS SO ORDERED.**

>                              /s/ Peter C. Economus  -  August 9, 2011
>                              **UNITED STATES DISTRICT JUDGE**